GnEEN, J.
delivered the opinion of the court.
The Charter of the Nolensville Turnpike Company refers to the Franklin Turnpike Company, and grants the same rights and privileges, as are therein granted to the Franklin Turnpike Company.
The Company was authorized after the completion of five miles of the road, to erect a toll-gate and receive tolls; but no toll-gate was to be erected in a less distance than two miles from the town of Nashville. It also provided, (acts 1839, Pamphlet, page 166,) that “all roads except on the ground where the Turnpike may pass, now in use, shall be continued as heretofore, unless the County Courts in the county through which they may pass, shall order them or either of them to be discontinued.”
The charter' directed also, that the. road should be opened at least 30 feet wide, with sufficient ditches on each side. The road has been constructed and a gate is erected two miles from Nashville. This road, for the distance of these two miles, is upon the bed of an old road, called the Nolensville Road, except a few segments of the old road, which are departed from by the new road, for the reason; that it does not conform to the *317 old road. There is a neighborhood road called “the Mill creek road,” which intersects the Turnpike road near the gate. The Turnpike Company insist that this road is merged in the turnpike south of their gate, and that the gate must be passed through in travelling the Mill creek road to Nashville. The defendants in error, insist that the margins of'the two roads only adjoin south of the gate, and that they have a right to travel on that part of the old road, which is not occupied by the turnpike, parallel with the turnpike, so as to avoid going through the gate.
From the evidence it appears that there is a small stream, a few feet south of the gate, near which the old road was very wide; made so by travellers turning from the centre, to seek better ground, thereby having for the breadth of 90 feet, the appearance of travel, and giving to the ground the character of a road. The turnpike has been placed upon the old road; but on the east side, it does not occupy at the gate, all the ground constituting the old road. Some 20 or 30 feet of the old road remain, east of the ditch of the turnpike.
. We think the Turnpike Company, by running upon the bed of the old road, destroyed and abolished that road, as a public easement. The charter declares, that “all roads except on the ground where the turnpike may pass, now in use, shall be continued as heretofore.” Blit the Turnpike Company in.establishing their road, on “the nearest and most practicable route,” had a right to occupy the ground on which an old road had been laid out. Of course the old road would cease to exist. For although the margin of the old road might still be visible, along the track of the turnpike for the whole distance, for the reason that it may have been twice as wide as the turnpike, yet its existence as a public road would be destroyed; because to continue the old road, parallel with, and adjoining the margin of the turnpike, would be inconsistent with the franchise granted to the Turnpike Company. They' have built the. road in fulfilment of a contract with the State, by which in consideration of their labor and expense in the construction thereof, for the benefit of the public, they are authorized to erect gates and receive toll. If the margin of an old road might be traveled, so *318 as to avoid the turnpike toll-gates, this right would be utterly defeated. Where two conflicting rights exist, the less must give way to the greater. The traveling public have no vested right in the easement of a public road. They may be granted or abolished by the State at pleasure; and when a turnpike road is constructed along the bed of such road, in pursuance of a charter, that vests in the Company the right to receive toll, the old road is thereby abolished. The vested right which the Company has in the franchise, is superior to any right of easement that the public had in the old road.
' It is insisted, however, that the “Mill Creek Road” is not merged in the turnpike south of the gate, and that as part of the road is visible, that part may be traveled without going through the gate. We are of opinion that the roads came together before the gate is reached. Many of the witnesses say, that the turnpike was built on the centre of the old road. Mr. Bostick who superintended the laying out and construction of the road, says, that at the gate, the turnpike is in the centre of the old read. Other witnesses think the roads do not come together until after the gate is passed. All agree that a part of the old road is visible east of the turnpike; but many witnesses speak of the great width of the old road; so that if the turnpike were on the centre of the old road, part of it would still be visible.
We are of opinion, that the turnpike at the gate, is, in the language of the charter, on the ground occupied by the old road, and consequently its existence as a public road, is not preserved by that provision of the charter, but that it is abolished by the construction of the turnpike.
The judgment reversed, and the application refused.